Case 1:25-cv-13499-RGS Document 15 Filed 12/22/25 Page 1 of 10

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ANY LUCIA LOPEZ BELLOZA,**<br>**Petitioner,**<br><br>**v.**<br><br>**PATRICIA HYDE, et al.,**<br>**Respondents.** | **No. 1:25-cv-13499-RGS** |

**PROPOSED AMICUS BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, PROTECT DEMOCRACY PROJECT, AND THE YALE LAW SCHOOL PETER GRUBER RULE OF LAW CLINIC**

On November 22, 2025, the government removed Any Lucia Lopez Belloza from the United States in violation of a court order. In the wake of that noncompliance, the government has not come forward to offer an explanation or express contrition, but instead—treating the court order it violated as a non-event not requiring any mention at all—it has sought dismissal of the petition, including on the grounds that removal succeeded in mooting Ms. Belloza's claims. *See* ECF No. 8 at 18-20.

Amici curiae, the American Civil Liberties Union of Massachusetts, Inc., the Protect Democracy Project, and the Yale Law School Peter Gruber Rule of Law Clinic, are organizations concerned with the rule of law and the availability of meaningful judicial relief, including access to the writ of habeas corpus, to vindicate violations of constitutional rights. They write to respectfully urge the Court to take appropriate action to inquire into and address the government's noncompliance with the November 21 Order, which prohibited the government from "remov[ing]

the petitioner from the jurisdiction of the United States or transfer[ing] petitioner to a judicial district outside that of Massachusetts for a period of at least at least 72 hours from the time this Order is docketed." *See* ECF No. 2.

The government violated the terms of that November 21 Order by removing Ms. Belloza from the United States on Saturday, November 22, 2025 on a flight that left Texas at 10:35am ET.[1] *See* ECF No. 8-1 ¶10. The government has not provided any explanation for that noncompliance, and the circumstances suggest that U.S. Immigration and Customs Enforcement (ICE) may have defied the November 21 Order *intentionally* on the view that the habeas court lacked jurisdiction.

But the propriety of the Court's order was not for the government to determine of its own accord. The district court had jurisdiction and authority to enter the November 21 order—it had received a new filing, had jurisdiction to determine its jurisdiction, and was authorized to "preserve existing conditions," *United States v. United Mine Workers*, 330 U.S. 258, 290-93 (1947), pending its consideration—and even more important, none of that is relevant to the government's duty to comply with the order until and unless it was overturned. To permit executive branch officials to freely "annul the judgments of the courts of the United States" by ignoring court orders they disagree with would not just "destroy the rights acquired under those judgments"; it would make "a solemn mockery" of

---

[1] Amici assume for present purposes that the government completed its transfer of Ms. Belloza from Massachusetts to Texas on November 21 at 4:48pm, before the 6pm filing of her habeas petition and the Court's 6:10pm order instructing that she not be moved from Massachusetts or removed from the United States.

"the constitution itself." *United States v. Peters*, 9 U.S. 115, 136 (1809) (Marshall, C.J.). This Court can, and should, take appropriate action to investigate and address the government's noncompliance.

## I. The government was required to comply with the November 21 Order.

The government was not free to disregard the November 21 Order even if it believed that it would ultimately prevail in the jurisdictional inquiry.[2] Our legal system relies on adherence to all but the most patently unlawful judicial orders. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."); *Maness v. Myers*, 419 U.S. 449, 458-59 (1975). Accordingly, the proper recourse for a party who feels aggrieved by a court order is to seek relief

[2] Though not necessary to the arguments made in this letter, the Court does have both subject matter jurisdiction, *see Ozturk v. Trump*, 777 F. Supp. 3d 26, 42 (D. Mass. 2025) (subject matter jurisdiction is not implicated by arguments regarding habeas jurisdiction), and habeas jurisdiction, *Van Tran v. Hyde*, No. 25-cv-12546-ADB, 2025 WL 3171210, at *4 (D. Mass. Nov. 13, 2025). While *Van Tran* involved a petition filed while a noncitizen was on an airplane, the Court's reasoning is applicable here, where "at the time of filing, Petitioner's counsel could not know which district court had territorial jurisdiction over Petitioner's immediate custodian, [and] this district was the logical place to file the Petition given that Petitioner resided here, was arrested here, and was detained here." 2025 WL 3171210, at *4; *but see Ozturk*, 777 F. Supp. 3d at 43 (example of another session of this district transferring case to district in which petitioner was at the time of the habeas filing). And even when subject matter jurisdiction is in question, of course, courts have jurisdiction to consider and determine it. *See Brownback v. King*, 592 U.S. 209, 218 (2021).

from that order, whether from the issuing court or on appeal. Court orders "must be obeyed . . . however erroneous the action of the court may be," unless and "until its decision is reversed for error[.]" *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) (*quoting Howat v. Kansas*, 258 U.S. 181, 189-90 (1922)).

The fundamental precept that the government shall obey a court's commands assumes special significance in a petition for a writ of habeas corpus. *See Fay v. Noia*, 372 U.S. 391, 399-402 (1963) (reaffirming "the high place of the writ in our jurisprudence" and repeating "there is no higher duty than to maintain it unimpaired") (citation modified), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977). This principle has ancient origins. As early as the 17th century, English justices of the King's Bench rejected claims of executive immunity and jailed a contemnor who refused to answer the writ. *See* Paul D. Halliday & G. Edward White, *The Suspension Clause: English Text, Imperial Contexts, and American Implications*, 94 VA. L. REV. 575, 599-600 & nn.54-55 (2008). Still today, courts must have authority to issue ancillary orders necessary to preserve the status quo, including their own jurisdiction. *Cf. A.A.R.P. v. Trump*, 605 U.S. 91, 97 (2025). Otherwise, the writ would cease to function as "an indispensable mechanism for monitoring the separation of powers," ceding to the executive "the power to switch the Constitution on or off at will[.]" *Boumediene v. Bush*, 553 U.S. 723, 765-66 (2008).

Case 1:25-cv-13499-RGS Document 14 Filed 12/19/25 Page 5 of 10

## II. The Court has authority to inquire into and address noncompliance with the November 21 Order.

The power of the federal courts to enforce their orders has "from the earliest history of jurisprudence . . . been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge." *United States v. Barnett*, 376 U.S. 681, 699-700 (1964). Here, the Court issued an order to "preserve existing conditions," *United Mine Workers*, 330 U.S. at 290-93, holding in place these conditions over the weekend so that the case could be considered by the judge who would be assigned to it on Monday. Rather than challenge that order—through a motion for reconsideration, an appeal, or even a mandamus action—the government ignored it, proceeding with exactly the conduct the order prohibited: Ms. Belloza's removal.

This is precisely the fact pattern that courts are empowered to address through proceedings to investigate and enforce compliance with their orders. As the Supreme Court observed in *United Mine Workers,* "defendants filed no motion to vacate the order [prohibiting the encouragement of a strike]. Rather, they ignored it, and allowed a nationwide coal strike to become an accomplished fact. This Court has used unequivocal language in condemning such conduct[.]" 330 U.S. at 290.

Even if this Court ultimately determines that the habeas claims in this case should be dismissed or transferred, that determination would not disturb this Court's authority to address noncompliance with the November 21 Order. Because questions of compliance and sanctions are "collateral to the merits," *Willy v. Coastal Corp.*, 503 U.S. 131, 137-38 (1992), even "subject-matter jurisdiction over an

underlying action"—which, in all events, is present here—"is not a precondition of a federal court's authority to sanction those who violate its orders." *In re LeFande*, 919 F.3d 554, 561 (D.C. Cir. 2019). As recently explained by another district court, "[n]otwithstanding whether a court is later determined to have lacked subject-matter jurisdiction at the time of the violation . . . a party can be held in contempt for disobedience, and the same court can impose the sanctions even after its lack of jurisdiction has been revealed." *J.G.G. v. Trump*, 778 F. Supp. 3d 24, at 41 (D.D.C.), *mandamus granted, order vacated on other grounds*, 147 F.4th 1044 (D.C. Cir. 2025);[3] *see also United Mine Workers*, 330 U.S. at 295; *United States v. Shipp*, 203 U.S. 563, 572-73 (1906). Thus, even if the Court were to accept *every* argument in the government's brief, it would still have authority to conduct further proceedings on the question of noncompliance with the November 21 Order and take any appropriate action. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (describing courts' inherent powers to "fashion an appropriate sanction for conduct which abuses the judicial process"); *United Mine Workers*, 330 U.S. at 302-03 (criminal contempt); *id.* at 303-04 (coercive or compensatory contempt).

---

[3] Judges Katsas and Rao voted to grant the government's petition for a writ of mandamus, but Judges Rao and Pillard declined to fully bar the district court from proceeding with its contempt inquiry. Thus, the district court's contempt inquiry was allowed to proceed. *See J.G.G. v. Trump*, No. 25-5124, 2025 WL 3198891, at *3 (D.C. Cir. Nov. 14, 2025) (statement of Pillard, Wilkins, Garcia, JJ.).

## III. Judicial inquiry and action in response to the violation of the November 21 Order is vital.

Over the past year, courts have been compelled to respond to a concerning number of instances of noncompliance with judicial orders. In the following immigration-related cases, several very similar to Ms. Belloza's, courts have engaged actively in response to identified noncompliance in the form of:

- Removing four noncitizens from the United States in violation of a temporary restraining order and six noncitizens in violation of a preliminary injunction. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2158-59 (2025) (Sotomayor, J., dissenting) ("The Government thus openly flouted two court orders[.]").

- Removing an El Salvadoran national in violation of an order barring his removal and violating an order to facilitate his return to the United States for 83 days. *Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 WL 1095645, at *1 (D. Md. Apr. 11, 2025) (finding government "made no meaningful effort to comply" with preliminary injunction and order to file declaration).

- Removing 137 Venezuelan national plaintiffs and class members in violation of orders barring deportation flights. *J.G.G.*, 778 F. Supp. 3d at 37-38 (finding probable cause of criminal contempt), *vacated* 147 F.4th 1044 (D.C. Cir. 2025) (per curiam) (vacating probable cause order as impermissibly coercive), *rehearing en banc denied*, 2025 WL 3198891, at *2 (D.C. Cir. 2025) (en banc) (per curiam) (statement by Pillard, Wilkins, Garcia, JJ.) ("The district court's order here was a measured and essential response to what it reasonably perceived as shocking Executive Branch conduct.").

- Removing asylum applicant in violation of a judicially-enforced settlement. *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 8:19-cv-01944-SAG, ECF 287 (D. Md. May 28, 2025) (Defendants' had "utterly disregarded this Court's May 20, 2025 Order" and "Defendants not only ignore the requirements of this Court's Orders, ECF 254, 280, but also make no attempt to offer any justification for their blatant lack of effort to comply[.]").

- Removing a noncitizen in violation of a court order preventing their removal. *Melgar Salmeron v. Bondi*, No. 23-7792, ECF 49 (2nd Cir. June 24, 2025) (the government's "confluence of administrative errors" resulting in noncitizen's removal was "improper because it violated this Court's order staying Petitioner's removal from the United States during the pendency of this matter before this Court[.]").

- Unlawfully arresting class members in repeated violations of a settlement agreement. *Castañon Nava v. Dep't of Homeland Sec.*, No. 1:18-cv-03757, ECF 214 (N.D.Ill. Oct. 7, 2025) ("The Court finds, as it has found previously, … that the 46 agreed upon violations of the Consent Decree … constitute 'repeated, material violations[.]").

- Violating a settlement agreement to provide immigration legal services for class members. *Ms. L. v. U.S. Immigr. & Customs Enf't*, No. 3:18-cv-00428-DMS-AHG, ECF 795 (S.D. Cal. June 10, 2025) ("there is no dispute Defendants are in breach").

- Violating a court order permitting legal visitation to an immigration detention facility. *Pedro Vasquez Perdomo v. Noem*, No. 2:25-cv-05605-MDMF-SP, ECF 256 (N.D.Ill. Nov. 13, 2025) ("once again, the Court is ordering the federal government to stop—this time for the rest of this lawsuit").

- Terminating cooperative agreements with refugee resettlement agencies in violation of a court order. *Pacito v. Trump*, No. 2:25-cv-255, 2025 WL 1295660, at *2 (W.D. Wash. May 5, 2025) ("[T]he Government is not free to disobey . . . the direct orders of this Court and the Ninth Circuit . . . while it seeks such clarification.").

- Violating order to update government website to accurately describe the status of temporary protective status for Venezuelans. *Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 WL 2639214, at *1 (N.D. Cal. Sept. 11, 2025) ("Contrary to what the government argues, the final judgment . . . went into immediate effect."), *judgment stayed*, 606 U.S. --, 2025 WL 2812732 (Oct. 3, 2025).[4]

[4] Courts have also had to address noncompliance with court orders in a number of non-immigration cases. *See, e.g.*, *Comty. Legal Servs. in East Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, No. 3:25-cv-02847-AMO, ECF No. 42 at 1 (N.D. Cal. Apr. 7, 2025) ("Defendants' pending Motion to Dissolve does not excuse non-compliance with the Court's express orders[.]"); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775 F. Supp. 3d 100, 120 (D.D.C. 2025) ("Defendants cannot convincingly tell this court that there is no longer a need for injunctive relief after they were found to be in violation of another court's order."); *Nat'l Treasury Emps. Union v. Vought*, 778 F. Supp. 3d 144, 149 (D.D.C. 2025) ("[T]he Court has significant grounds for concern that the defendants are not in compliance with its Order as it was refined by the Court of Appeals."), *preliminary injunction vacated* 149 F.4th 762 (D.C. Cir. 2025); *Thakur v. Trump*, 795 F. Supp. 3d 1168, 1171 (N.D. Cal. 2025) ("NSF's actions violate the Preliminary Injunction."); *Abramowitz v. Lake*, No. 1:25-cv-887-RCL, ECF No. 72 at 2 (D.D.C. Aug. 25, 2025) (ordering depositions of

These recent trends raise significant challenges to the rule of law and make inquiry into the noncompliance in Ms. Belloza's case all the more essential. As this Court previously noted, "a society that governs itself under the rule of law cannot permit its citizens to pick and choose which among the laws they will or will not obey, at least if that society is to long endure." *See United States v. Puccio*, 812 F. Supp. 2d 105, 109 n.7 (D. Mass. 2011). The same is true of executive branch compliance with judicial orders, especially where a person's liberty is at stake. *See, e.g.*, *Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 404-05 (S.D.N.Y. 2004).

Amici respectfully urge the Court to take appropriate and necessary action to remedy the government's noncompliance with the November 21 Order. "[D]isobedience of court orders is inimical to the orderly administration of justice[.]" *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003). It should never be allowed to slide by or be "condoned by a slap on the wrist." *Alves v. Daly*, No. 12-cv-10935-MLW, 2014 WL 652928, at *2 (D. Mass. Feb. 14, 2014) (quoting *Damiani v. R.I. Hosp.*, 704 F.2d 12, 16 (1st Cir. 1983)).

---

government officials to "allow one final opportunity, short of a contempt trial" to "explain how they are in compliance with the Court's preliminary injunction"); *Washington v. Trump*, No. 2:25-cv-00244-LK, 2025 WL 835030, at *5 (W.D. Wash. Mar. 17, 2025) ("Defendants' unreasonable and self-serving interpretation of the Court's orders is certainly deserving of the above reprimands, as well as a warning that the Court may impose sanctions for any future violations[.]"). For a full collection of cases involving court order noncompliance, *see generally* Ryan Goodman et al, *The "Presumption of Regularity" in Trump Administration Litigation*, JUST SECURITY, (Nov. 20, 2025), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/.

Respectfully submitted,

Dated: December 19, 2025

*/s/ Adriana Lafaille*
Jessie J. Rossman (BBO #670685)
Adriana Lafaille (BBO # 680210)
Julian Bava (BBO #712829)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org
jbava@aclum.org

*Counsel for amicus curiae the American Civil Liberties Union of Massachusetts, Inc.*

/s/ JoAnna Suriani
JoAnna Suriani (pro hac vice forthcoming)
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
joanna.suriani@protectdemocracy.org

*Counsel for amicus curiae Protect Democracy Project*

/s/ Sonia Mittal
Harold Hongju Koh (pro hac vice forthcoming)
Sonia Mittal (pro hac vice forthcoming)
Peter Gruber Rule of Law Clinic
Yale Law School
127 Wall Street, P.O. Box 208215
New Haven, CT 06520-8215
(203) 432-4932
harold.koh@ylsclinics.org
sonia.mittal@ylsclinics.org

*Counsel for amicus curiae the Yale Law School Peter Gruber Rule of Law Clinic*