UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-13499-RGS

ANY LUCIA LOPEZ BELLOZA,

Petitioner

v.

PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigration and Customs Enforcement, KRISTI NOEM, U.S. Secretary of Homeland Security, PAMELA BONDI, U.S. Attorney General, DONALD J. TRUMP, President of the United States,

Respondents.

MEMORANDUM AND ORDER ON PETITIONER'S
MOTION FOR ORDER TO SHOW CAUSE

January 16, 2026

STEARNS, D.J.

An ill-starred marriage of a lawyer's behindhand filing and a bureaucratic fumble ignited a perfect storm that swept up an innocent and unsuspecting teenage college student traveling home to Texas from her freshman year at Babson College in Massachusetts to surprise her parent for Thanksgiving break. A three-day whirlwind ended with petitioner Any Lucia Lopez Belloza (Any) stranded in Honduras, the ancestral home from which her mother had brought her to the United States at age eight in a (thus

far) unsuccessful quest to be admitted as lawful residents. The United States, to its credit, apologized to Any and the court at a January 13, 2026 hearing for what it agrees was a tragic (and preventable) mistake. There are now two principal issues before the court: (1) Does it have jurisdiction over Any's habeas corpus petition given her lawyer's late filing on her behalf in the wrong judicial district? And (2) notwithstanding the answer to the first question, is there a remedy within the power of the United States to perform that will give justice to Any without compromising any immediate interests it may have in its enforcement of the immigration laws? The answer to the first question is (unfortunately) no. The answer to the second question is (fortunately) yes, as the court will explain.

First, a summary of the undisputed facts drawn from the pleadings and the statements of counsel at the January 13 hearing. Any, now nineteen-years-old, was born in Honduras in 2006, and by virtue of her birth, is a citizen of that country. *See* Belloza Decl. (Dkt # 16-1) ¶ 3; Chan Decl. (Dkt # 8-1) ¶ 5. In December of 2014, she was brought to the United States by her mother without prior authorization. Belloza Decl. ¶ 2; Chan Decl. ¶ 6. Any and her mother reported to immigration authorities and were released into the United States to await adjudication of their status. They settled in

Austin, Texas, with Any's father. Belloza Decl. ¶ 2. Any graduated from high school in Austin, earning a diploma and a full scholarship to prestigious Babson College in Wellesley, Massachusetts, where she was enrolled as a fulltime student at the time of her detention (and remains a student in good standing to this day).

Any's mother, in due course, applied for asylum on behalf of herself and (derivatively) Any, or alternatively, for a withholding of removal. On March 21, 2016, the Immigration Judge who heard Any's mother's case denied her application. Chan Decl. ¶ 7. The denial was affirmed by the Board of Immigration Appeals on February 8, 2017, and an order of removal was entered.[1] Chan Decl. ¶ 7.

In September of 2025, Any enrolled at Babson College and began her freshman year of studies. *See* Belloza Decl. (Dkt # 16-1) ¶ 3. Proud of her achievement, she decided to make a surprise visit to her parents in Austin to celebrate the Thanksgiving holiday. *Id.* ¶ 4. A week before Thanksgiving Day, on Thursday, November 20, 2025, she arrived at Logan Airport in

---

[1] The court has no reason to doubt the government's representation that this order remained outstanding at the time of Any's detention. *See* Gov't. Resp. (Dkt # 27), Ex. C. The court, however, seriously doubts that an eleven-year-old child would have known of the order, or that, if she did, she would have understood its ramifications.

3

Boston to begin the first leg of her trip to Austin by catching a 5:45 a.m. flight to Baltimore, Maryland. *Id.* ¶ 5. As she neared the gate, she was stopped by two ICE officers, who escorted her to a waiting SUV. *Id.* ¶¶ 7-9. She was handcuffed and taken to the ICE's Burlington Field Office, arriving at 6:00 a.m. *Id.* ¶ 9, 12. After processing, she was permitted to make a phone call to her father at approximately 11:00 a.m. to explain what had happened and where she was being held. *Id.* ¶ 21-22. At approximately 2:00 p.m., she was permitted to call her mother. *Id.* ¶ 27. Shortly thereafter, she was allowed a second call to her father, who told her that the family was attempting to hire a lawyer to intercede on her behalf. *Id.*

At some point that afternoon, the family succeeded in engaging the services of a Boston immigration lawyer, Todd C. Pomerleau, Esq. November 20 passed without Attorney Pomerleau filing in this court for a temporary stay of removal order.[2]

---

[2] Under the established practice in this District, temporary stay orders are issued virtually automatically when a habeas petition is filed to permit the case to be assigned to and considered by an Article III judge. (According to the government's count, some 700 orders have been issued in the months since the current escalation of immigration enforcement began. To this court's knowledge, no application for a stay order has been denied.) Although Attorney Pomerleau told the court that he did not file out of a reluctance to awaken a judge after hours, the orders are docketed and acted upon on a 24/7 basis, as the local immigration bar is well aware.

Shortly after breakfast on the morning of Friday, November 21, Any was transferred with other detainees to Hanscom Air Force Base in Bedford, Massachusetts. *Id.* ¶¶ 31-32. She was placed on an ICE-chartered flight to Port Isabel in the Southern District of Texas, where ICE maintains a detention center. *Id.* ¶¶ 33-38. The flight departed Hanscom at 12:27 p.m. and arrived in Texas at 4:48 p.m. that afternoon. Chan Decl. ¶ 9.

Attorney Pomerleau did not file Any's habeas petition until 6:00 p.m. that day.[3] Ten minutes later, at 6:10 p.m., the Emergency Judge issued the temporary stay order barring ICE from transporting Any from the District of Massachusetts or outside the territorial jurisdiction of the United States for 72 hours to permit the random assignment of the petition to a district court judge. (The case was immediately thereafter drawn to this session).

Six minutes after the Emergency Judge's order issued, at 6:16 p.m., the duty Assistant U.S. Attorney informed Richard St. Pierre, the ICE officer on emergency duty, of the order. St. Pierre Decl. (Dkt # 27-1) ¶ 10. St. Pierre had been temporarily assigned to monitor the inflow of messages from the

---

[3] When asked at the hearing why the petition had not been filed earlier, Attorney Pomerleau told the court (as he did in his pleadings) that he had spent the day making "significant efforts" to obtain more information from ICE about Any's whereabouts but was unable to reach a live person by telephone. *See* Pet.'s Reply Mem. (Dkt # 16) at 3.

5

U.S. Attorney's Office because of "short staffing." *Id.* ¶ 11. St. Pierre acknowledges in a sworn declaration submitted to the court that he received notice of the order. He states that he reviewed Any's case and determined that she had already been removed to Texas. *Id.* ¶ 12. While he entered a memorandum notice of the order, he did not enter a "Z-Hold" flag alerting ICE officers in other districts of the need for further review of the case "because I was under the mistaken impression that I did not need to do so because the Petitioner was no longer in the state of Massachusetts" and he believed that, "since Petitioner was no longer in Massachusetts, the Court's order did not apply to her." *Id.* ¶¶ 13-14.[4]

The following morning, Saturday, November 22, 2025, Any was placed on flight that left Harlingen, Texas at 10:35 a.m., arriving in Tegucigalpa, Honduras at 1:09 p.m. Chan Decl. ¶ 10. Any remains in Honduras today, living with her grandmother, and struggling to remain current with her studies and exams at Babson College by remote attendance.

It is well established that habeas jurisdiction vests in the judicial district in which a petitioner is confined and that her petition must name the proper custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-435 (2004);

---

[4] Government's counsel unequivocally conceded at the hearing that St. Pierre's belief was mistaken as a matter of law and practice.

*Vasquez v. Reno*, 233 F.3d 688, 695 (1st Cir. 2000). With a rare and largely untested exception,[5] there can be only one such district. *Id.* Very much in point is *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025), in which the Supreme Court determined that petitioners confined in Texas could not properly prosecute a petition in the District of Columbia for want of venue. In this case, because Any's petition was filed after she had arrived at the detention center in Port Isabel, physical jurisdiction over the petition did not attach in this district, and the petition could only be brought in the district where she was then confined, namely, the Southern District of Texas.

That the court concludes that it lacks jurisdiction over Any's habeas petition does not, however, conclude the matter. There remains the issue of a remedy. There is happily no one-size-fits-all solution for seeing that justice be done in what all agree was an amalgam of errors that ended badly

---

[5] The possible exception identified by the First Circuit in *Vasquez* might arise where the government deliberately and in bad faith holds a detainee incommunicado or shuttles her from place to place with the explicit purpose of preventing her from seeking habeas relief or manipulating jurisdiction. *Vasquez*, 233 F.3d at 696; *see also Padilla*, 542 U.S. at 441-442. The exception does not apply here, as there was no attempt on the part of the government to conceal Any's location or to prevent her from contacting her parents. Although the issue is premature, there is a genuine question whether a court's ability to enforce compliance with its orders regarding consideration of a petition is independent of its jurisdiction over the petition itself, such that the power to issue civil contempt remains.

for Any. Rather there is a salmagundi of options. As the court suggested at the hearing, the simplest solution would be for the Secretary of State to exercise his considerable discretion under the INA, *see* 8 U.S.C. §§ 1101(a)(15)(F), 1184, to grant Any a non-immigrant student visa that would allow her to continue her studies at Babson College while her immigration status plays out in due course in the appropriate courts of law.

The second alternative, as alluded to in footnote 5, *supra*, is for the court to order the government to arrange Any's expeditious return to the United States and to the status quo, with a threat of a finding of contempt should the government refuse to comply. Such a return could be accomplished under such appropriate and reasonable conditions that the government might impose, such as the posting of a bond. As the court intimated at the hearing, a finding of criminal contempt for the government's failure to abide by the letter of the court's stay order is not on the table, as the government did nothing of a deliberate nature to warrant such a finding. Civil contempt, on the other hand, is not a punishment for past wrongdoing but "a forward-looking penalty meant to coerce compliance" with a court's order. *Hawkins v. Dep't of Health & Human Servs. for N.H*, 665 F.3d 25, 32 (1st Cir. 2012). The court is also sensitive to the fact that

8

contempt, criminal or civil, is a weapon of last resort to be deployed sparingly using the "least possible power suitable to achieve the end proposed." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991).

At this moment in time, there is nothing for the court to coerce, as it would prefer to give the government an opportunity to rectify the mistake it acknowledges having made in Any's case before contemplating the issuance of any further order. To this end, the court directs the Department of Justice to convey this decision to the Secretary of State, with the court's recommendation that a student visa (or other comparable visa status) be extended to Any in the Secretary's discretion. The court will expect an answer within a reasonable period of time (but in no event more than twenty-one (21) days from the date of this Order).

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE