UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-13499-RGS

ANY LUCIA LOPEZ BELLOZA,

Petitioner

v.

PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New
England Special Agent in Charge, and TODD LYONS, Acting Director U.S.
Immigration and Customs Enforcement, KRISTI NOEM, U.S. Secretary of
Homeland Security, PAMELA BONDI, U.S. Attorney General, DONALD J.
TRUMP, President of the United States,

Respondents.

ORDER ON CIVIL CONTEMPT

February 13, 2026

STEARNS, D.J.

Wisdom counsels that redemption may be found by acknowledging
and fixing our own errors.   *See, e.g.,* Proverbs 28:13.   In this unfortunate
case, the government commendably admits that it did wrong.   Now it is time
for the government to make amends.

## FACTUAL BACKGROUND

The court will briefly recap the pertinent facts, as described in more
detail in its January 16, 2026 Order (Dkt # 37).   Any Lucia Lopez Belloza

was born in Honduras in 2006 and, by virtue of her birth, is a citizen of that country.    In December of 2014, her mother brought her into the United States without prior authorization.    They ultimately settled in Austin, Texas, with Any's father.

Any's mother, in due course, applied for asylum on behalf of herself and (derivatively) Any, or alternatively, for a withholding of removal.    On March 21, 2016, the Immigration Judge who heard Any's mother's case denied her application.    The Board of Immigration Appeals affirmed the denial on February 8, 2017, and entered an order of removal.    Any was eleven years old at the time.

In 2025, Any graduated from high school in Texas and began her freshman year at prestigious Babson College in Wellesley, Massachusetts, on a scholarship    Hoping to surprise her parents with a visit during the Thanksgiving holiday, Any arrived at Logan Airport in Boston on the morning of November 20, 2025, to begin the first leg of her journey to Austin, Texas (a 5:45 a.m. flight to Baltimore, Maryland).    Before she could board her plane, she was stopped by two Immigration and Customs Enforcement (ICE) officers, who handcuffed her and brought her to ICE's Burlington Field Office.    Any's family received notice of her detention later that day and

engaged the services of a Boston immigration lawyer, Todd C. Pomerleau, Esq.

Shortly after breakfast on the following morning, Friday, November 21, 2025, Any was transferred with other detainees to Hanscom Air Force Base in Bedford, Massachusetts.   She was placed on an ICE-chartered flight to Port Isabel in the Southern District of Texas, departing Hanscom at 12:27 p.m., and arriving in Texas at 4:48 p.m.

Attorney Pomerleau filed a habeas petition with this court at 6:00 p.m., roughly an hour after Any arrived in Texas.   At 6:10 p.m., the Emergency Judge issued a temporary stay order barring ICE from transporting Any from the District of Massachusetts or outside the territorial jurisdiction of the United States for 72 hours to permit the random assignment of the petition to a district court judge.[1]   *See* Dkt # 2.

Six minutes after the Emergency Judge's order issued, at 6:16 p.m., the duty Assistant U.S. Attorney informed Richard St. Pierre, the ICE officer on emergency duty, of the order.   St. Pierre had been temporarily assigned to monitor the inflow of messages from the U.S. Attorney's Office because of "short staffing."   St. Pierre Decl. (Dkt # 27-1) ¶ 11.   St. Pierre acknowledges

---

[1] The case was thereafter drawn to this session.

in a sworn declaration submitted to the court that he received notice of the order and entered a memorandum notice that the order had issued. Because Any was already in the state of Texas, however, he mistakenly did not enter a "Z-Hold" flag alerting ICE officers in other districts that Any's case was still pending judicial review.[2]

The following morning, Saturday, November 22, 2025, Any was placed on a flight that left Harlingen, Texas at 10:35 a.m., and arrived in Tegucigalpa, Honduras at 1:09 p.m.   Any remains in Honduras today, living with her grandmother, and struggling to remain current with her studies and exams at Babson College (which she now attends remotely over ZOOM).

## DISCUSSION

The court agrees with Respondents that it lacks jurisdiction over the original petition, which was filed by Any's attorney too late in the wrong

---

[2] The fact that Any was no longer in the District of Massachusetts rendered the portion of the Emergency Judge's order barring her removal from Massachusetts invalid.  As Respondents have previously conceded, however, the portion of the order barring removal from the United States still attached.  *See* Reply to Mot. for Order to Show Cause (Show Cause Reply) [Dkt # 27] at 2, 14 (admitting that St. Pierre was "mistaken" in his belief that ICE did not need to comply with the order barring removal); January 13, 2026 Hearing Tr. (Hearing Tr.) [Dkt #39] at 6, 22-23.   Respondents' attempt to change tack and argue otherwise now is unavailing.

district. [3]    That issue is separate, however, from the court's inherent authority to address a violation of one of its orders,[4] as has occurred here.

Respondents have readily acknowledged that they violated the Emergency Judge's order staying removal when they removed Any from the United States on November 22, 2025.    *See* Show Cause Reply at 2, 14; Hearing Tr. at 21.    The court's hope was to avoid finding Respondents in civil contempt for that violation by giving the government an opportunity to voluntarily correct what, all parties agree, was a mistake.    In that spirit, the court suggested that the Secretary of State, with his considerable authority over consular affairs, consider providing Any with an expedited student visa to pursue her studies at Babson College while the validity of her removal order was litigated in the proper fora.    The Secretary of State has, regrettably, declined the invitation, requiring further intervention from this court.

---

[3] In a sworn affidavit filed with this court, Attorney Pomerleau attested that ICE had not updated Any's location in its system or responded to his attempts to confirm her location, and thus that he did not know that she was in Texas at the time of filing.

[4] *United States v. United Mine Workers of America*, 330 U.S. 258 (1947), cited by Respondents for the proposition that a court order void *ab initio* is unenforceable, is inapt, as in this case (unlike in *Mine Workers*) this court did not lack the authority to issue a valid order in the first place.    *See id.* at 294.

Civil contempt is not a punishment for past wrongdoing but "a forward-looking penalty meant to coerce compliance" with a court's order.  *Hawkins v. Dep't of Health & Human Servs. for New Hampshire*, 665 F.3d 25, 32 (1st Cir. 2012).  Its purpose is to give a party the opportunity to rectify the harm that it has caused.  Here, that purpose can best be served by returning all parties to the status quo that existed at the time Any was wrongfully removed from the United States.

Attempting to avoid this outcome, Respondents argue that returning Any, who is the subject of a final order of removal (the validity of which the court notes has not yet been tested, at least in the circumstances of Any's case),[5] to the United States would be futile because it "would merely result in subsequent detention and removal again to Honduras."  Resp. to Order [Dkt #41] at 4.  In making this argument, however, Respondents have confused the prerogatives of the Executive with those of the Judiciary.[6]  It

---

[5] As the court noted in its January 16, 2026 Order, it "seriously doubts that an eleven-year-old child would have known of the order, or that, if she did, she would have understood its ramifications."  *See* Dkt # 37 at 3 n.1.

[6] As eloquently stated by Founder John Adams in Article 30 of the Massachusetts Declaration of Rights (predating but informing the enshrinement of the separation of powers doctrine in the United States Constitution):

In the government of this commonwealth, the legislative

is for an appropriate court (whether an Immigration Court or ultimately a Court of Appeals) to determine the extent of Any's due process rights and the legality of her removal.   This is not an issue for the Executive to prejudge and arrogate to itself, whatever stance it may choose to take in litigating the removal issue before a court of law.

## ORDER

Respondents are ORDERED and DIRECTED to facilitate Any's return to the United States no later **than fourteen (14) days from the date of this Order** (*i.e.*, no later than February 27, 2026).   Respondents shall transmit a copy of this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.   Respondents shall further file status reports (accompanied by declarations from individuals with personal knowledge) with the court on February 18, 2026, and if necessary, on February 26, 2026, confirming the tangible steps they have taken to facilitate Any's return to the United States in compliance with

---

department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.

Mass. Const. pt. 1, art. 30.

this Order.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE